IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| **DONNA M. BLAKE** | : | |
| **JAYSON E. COHEN** | : | |
| **MICHELLE M COHEN and** | : | |
| **DENISE A. DISCHERT,** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | **08-CV-1122** |
| **v.** | : | |
| | : | |
| **CUSTOM MORTGAGE SOLUTIONS, INC.,** | : | |
| **and ROBERT DISCHERT,** | : | |
| **Defendants.** | : | |

---

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                    **March 17, 2009**

        Before the Court are Defendants' respective Motions to Dismiss [Doc. Nos. 3 & 8], Plaintiffs' Responses [Doc. Nos. 5 & 9], and Defendants' Reply thereto [Doc. No. 11]. Defendants claim via separate, but nearly identical Motions to Dismiss that Plaintiffs' Complaint should be dismissed in its entirety on the grounds that Plaintiffs' claims were extinguished by a previous settlement agreement. Plaintiffs argue that Defendants failed to perform under the terms of the settlement agreement and are therefore not entitled to the protection of its release or any effect of collateral estoppel. In their Complaint, Plaintiffs allege that Defendants have engaged in common law fraud and fraudulent misrepresentation in violation of various Pennsylvania consumer protection laws. For the reasons set forth below, the Court will grant each Defendant's Motion to Dismiss.

## I.      Factual and Procedural Background

        Plaintiffs Donna M. Blake, Michelle M. Cohen and Denise A. Dischert are sisters, and Jayson

E. Cohen is the husband of Michelle M. Cohen (collectively "Plaintiffs").[1] Defendant Robert Dischert ("Dischert" ) is a first cousin to Plaintiffs and an agent of Defendant Custom Mortgage Solutions ("Custom").[2] On or about November 1, 2005 Dischert approached each of the Plaintiffs and informed them that he could obtain each a mortgage from World Savings Bank ("World") with an interest rate of 1.95% per year.  Plaintiffs claim that, at the time, each of the sisters held mortgages with fixed interest rates between 4.99% and 5.49%, numbers that were on par with the prime mortgage interest rates of the day. Each of the sisters maintained current mortgage payments.[3] Dischert continued to solicit the sisters via e-mail and oral communication, offering the possibility of refinancing their mortgages at a lower rate. At some point, he provided each of the sisters with copies of "Truth in Lending Disclosure Statements" which set forth the terms of the loan proposal.[4]

On November 28, 2005 the Cohens and Denise Dischert each agreed, in separate meetings, to refinancing their mortgages based on the belief that they would obtain a loan that included a mortgage with a fixed interest rate of 1.95%.[5] Each settlement was conducted by an employee of Hunter Settlement and attended by Dischert.[6]

The Cohens and Denise Dischert both allege that during the course of their respective settlements they pointed out discrepancies between the terms listed on the paperwork they were

---

[1] Compl. ¶ 3.

[2] Compl. ¶ 5.

[3] Compl. ¶ 7.

[4] Compl. ¶ 8.

[5] Compl. ¶¶ 9, 10, 13 & 14.

[6] Compl. ¶¶ 10 & 13.

provided and what Dischert had previously told them.[7]  They allege that Dischert continued to reassure them that they would receive loans at a fixed annual interest rate of 1.95% and that the representative from Hunter Settlement present at the meetings made no attempt to dispute him. Plaintiffs claim that Hunter Settlement was selected specifically by Defendants Dischert and Custom because Hunter Settlement representatives would be silent about in their knowledge that misrepresentations about rates were being made.[8]  Among the documents the Cohens and Denise Dischert received to memorialize the loan transaction were the Federal Truth-in-Lending Act ("TILA")[9], a Disclosure Statement, a Settlement Statement, and Notices of the Right to Cancel.[10]

A little more than a week after the Cohens and Denise Dischert entered into loan agreements, on December 6, 2005, the third sister, Donna Blake, also entered into a similar loan agreement with the promise of a 1.95% fixed annual interest rate.[11]  The settlement meeting was conducted in her home and attended by Dischert and a representative from Hunter Settlements.  Blake also alleges that she pointed out the loan paperwork did not appear to list the interest rate Defendant Dischert had promised her, but claims that the representative from Hunter Settlements told her she would need to speak directly to Custom regarding any such issues.[12]  Blake also alleges that Hunter Settlements was picked because of its representative's willingness to remain evasive about any

---

[7] Id.

[8] Id.

[9] 15 U.S.C. § 1601 et seq.

[10] Compl. ¶¶ 11 & 15.

[11] Compl. ¶ 17.

[12] Compl. ¶ 18.

misrepresentations.[13] At the time of the settlement Blake was also provided with a Federal Truth-in-Lending Act, a Disclosure Statement, a Settlement Statement, and Notices of the Right to Cancel.

Plaintiffs claim that the loan documents show that each party paid significant up front fees directly to Custom.[14]  They also allege that the documents show that Custom received payments from World for its "services" upon the completion of each loan agreement.[15]  Sometime after the initial loan settlement meetings, Plaintiffs claim they learned that their loans were not at the fixed annual interest rate of 1.95%, but instead were agreements known as "pick-a-payment" loans.[16]  These are loans that require a small minimum payment, but accrue interest at variable rates.[17] On or about May 5, 2006 counsel for Donna Blake forwarded a letter to World electing to rescind the loan transaction as the product of affirmative fraud and material violations of the TILA.[18]  On or about May 15, 2006 the Cohens did the same, as did Denise Dischert on May 24, 2006.[19]

On July 12, 2006 the three sisters as well as Jayson Cohen jointly filed a Complaint (the "First Complaint") in this Court against World, Custom and Robert Dischert alleging violation of various Pennsylvania consumer protection laws.[20]   At the request of the parties, the action was

---

[13] Id.

[14] Compl. ¶¶ 12, 16 & 20.

[15] Id.

[16] Compl. ¶ 21.

[17] Id.

[18] Compl. ¶ 22.

[19] Compl. ¶¶ 23, 24.

[20] Compl. ¶ 25.

referred by the Court to Magistrate Judge Carol Sandra Moore wells for settlement purposes.[21]  On

or about July 24, 2007 the parties executed a Settlement Agreement (the "Settlement Agreement")

and release.[22]  As part of the Settlement Agreement World agreed to enter into a loan modification

agreement with each of the Plaintiffs; World was to issue a check in the amount of $7,000 to

Plaintiffs' attorney David A. Scholl, Esquire; and Custom was to issue a check for $10,000 payable

to World, to be accomplished within 30 days of the Settlement Agreement.[23]

Plaintiffs allege that World subsequently communicated to them that their loan modifications

were contingent upon Custom's payment of $10,000 and that without such payment World would

not alter the loans as the Settlement Agreement intended.[24]  Plaintiffs claim that they took it upon

themselves to pay World $10,000 in an effort to ensure their loan modifications.[25]  On September

17, 2007 Plaintiffs filed a Motion to Enforce the Settlement Agreement, which specifically addressed

the $10,000 payment they had already made to World.[26]  The Motion was referred to Magistrate

Judge Carol Sandra Moore Wells and a hearing was held regarding the matter on December 19,

2007.  Following that hearing a Stipulation and Order was entered stating that any right to the

$10,000 payment described in the parties' Settlement Agreement which World had against Custom

and/or Defendant Dischert was assigned to the Plaintiffs in consideration of their $10,000 payment

---

[21] Compl. ¶ 26.

[22] Id.

[23] See Compl., Ex. P ("the Settlement Agreement").

[24] Compl. ¶¶ 28, 29.

[25] Compl. ¶ 30.

[26] Compl. ¶ 31.

to World.[27] Subsequently, on February 19, 2008, Plaintiff's Motion to Enforce the Settlement Agreement was dismissed as moot by this Court.[28]

Approximately two weeks later, Plaintiffs filed the Second Complaint alleging that Defendants have engaged in common law fraud in violation and fraudulent misrepresentation in violation of various Pennsylvania consumer protection laws, identical to the violations alleged in the First Complaint. The issues have been briefed and the matter is ready for disposition.

## II.   Legal Standard for Rule 12(b)(6) Motion to Dismiss

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.[29]

The Supreme Court has recently clarified this standard of review, explaining that "[a] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" without the allegation of sufficient facts in support.[30]  In order to survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[31]  A court may grant a 12(b)(6)

---

[27] See Blake v. World Savings Bank, No. 06-3046 (E.D. Pa. January 16, 2008) (order assigning any right of $10,000 owed to World Savings Bank to Plaintiff).

[28] See Blake v. World Savings Bank, No. 06-3046 (E.D. Pa. February 18, 2008) (order dismissing Plaintiffs' motion to enforce settlement agreement as moot.).

[29] Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).

[30] Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

[31] Id.

6

motion only "if it appears to a certainty that no relief could be granted under any set of facts which could be proved."[32]

## III.   DISCUSSION

Although they have filed separate Motions to Dismiss, Custom Mortgage Solutions and Robert Dischert are represented by the same attorney and filed nearly identical Motions and supporting memoranda.   Therefore, the Motions will be addressed concurrently in the Court's analysis.   Both Dischert and Custom argue that the Settlement Agreement is not a nullity, as Plaintiffs claim, and therefore the Settlement Agreement bars Plaintiffs' claims; that Plaintiffs' claims are barred by collateral estoppel; and that the instant action should be dismissed for failure to join World Savings as an indispensable party. For the reasons stated below the Motions to Dismiss will be granted.

### A.       The Settlement Agreement is not a nullity and therefore bars Plaintiffs' claims

At some point following the execution of the Settlement Agreement, Plaintiffs took it upon themselves to act outside the terms of the Settlement Agreement and pay $10,000 to World.   They claim that their payment was the only way to preserve the loan modifications they were entitled to as part of the Settlement Agreement and which World threatened to withhold since Custom had failed to pay World the $10,000 the Settlement Agreement required.   Plaintiffs offer no explanation why they chose to act outside the terms of the Agreement and make the payment to World without consulting the Court.   It was only after they paid $10,000 that Plaintiffs filed a Motion to Enforce the Settlement Order.[33]

---

[32] <u>D.P. Enterprises Inc. v. Bucks County Cmty. Coll.</u>, 725 F.2d 943, 944 (3d Cir. 1984).

[33] <u>See</u> <u>Blake v. World Savings Bank</u>, No. 06-3046, Mot. to Enforce [Doc. No. 27].

The result of that Motion was an Order, dated January 11, 2008 and signed by Magistrate Judge Carol Sandra Moore Wells that "any right to the $10,000 payment described in the parties settlement agreement dated January 21, 2007 which the bank has against Custom Mortgage Solutions Inc. and/or Robert Dischert arising out of the above-captioned lawsuit is hereby assigned to the Plaintiffs in consideration of the payment of $10,000 to the Bank by the Plaintiffs."[34]  Shortly after that Order was entered Plaintiffs filed the current Complaint making allegations against the instant Defendants, but not World, virtually identical to the First Complaint, and claiming that the settlement agreement is a nullity as to the instant Defendants because of their failure to perform their obligations under the agreement.

The Third Circuit has stated, "an unperformed settlement agreement will bar reinstitution of a prior claim only if the mere promise to perform in the settlement agreement supplies the consideration for release of the prior claim.  If the consideration for the release of the prior claim is performance of the settlement agreement, however, only substantial performance of the obligor's duties under the agreement will extinguish the claim."[35]  Therefore the Court must determine two things: (1) whether the release in the Settlement Agreement was based on a mere promise to perform the terms of the agreement or the actual performance of those terms; and, if the release is predicated upon actual performance, (2) whether the performance was substantial so as to release the prior claim.

To answer the question of whether the Settlement Agreement was based on a mere promise

---

[34] See Blake v. World Savings Bank, No. 06-3046 (E.D. Pa. February 18, 2008) (order dismissing Plaintiffs' motion to enforce settlement agreement as moot.).

[35] Polish American Machinery Corp. v. R.D.&D. Corp. 760 F.2d 507, 511 (3d Cir. 1985).

to perform or actual performance the Court looks specifically to the language of the release in the

Settlement Agreement, which states:

> In consideration for the commitments and payments set forth in this Settlement Agreement, Plaintiffs and their attorneys and anyone else acting on their behalf or in their interest, hereby release, remise, acquit, and forever discharge Wachovia Corporation, Wachovia Bank, N.A., World Savings Bank, FSB, Rob Dischert, and Custom Mortgage, their agents, assigns, successors, servants, employees, attorneys, officers, trustees, shareholders, partners, parent corporations, subsidiaries, predecessors, and affiliated companies, of and from any and all claims, counterclaims, rights demands, costs, damages, losses, liabilities, actions and causes of actions, whatsoever in law or equity, including but not limited to any claim for attorneys fees, whether known or unknown, suspected, foreseen or unforeseen, actual or potential, from the beginning of the world and until the Settlement Agreement is signed.[36]

Plaintiffs argue that the release is based upon performance of the settlement

agreement, but offer no analysis of how or why that is so. In order to ascertain the intent

of the release, the Court views the phrase "in consideration for the commitments and

payments set forth in this Settlement Agreement" as the determinative portion, and the

most relevant term in that clause to be "set forth." After consulting a number of

dictionaries, the Court finds that the most common interpretation of the verb "set forth" is

"in consideration of," or to "propose." Black's Law Dictionary considers the phrase "set

forth" synonymous with "set out," which it defines as "to recite, explain, narrate or

incorporate (facts or circumstances)."[37] When applying those definitions of "set forth" to

the exact language of the release it is clear that the consideration referred to in the clause

"in consideration for the commitments and payments set forth in this Settlement

Agreement" is a promise of performance, not performance itself. The consideration is

---

[36] Settlement Agreement ¶ 7.

[37] Black's Law Dictionary (8th ed. 2004).

9

merely the "promise," or "recitation" of the commitments and payments contained in the Agreement. Because the Settlement Agreement is based upon a promise to perform, it bars reinstitution of Plaintiffs' prior claim.

Hence, there is no need to assess whether the settlement agreement has been substantially performed.  However, the Court does note that at the time the current action was filed Plaintiffs had received the benefits of what was "set forth" in the Settlement Agreement, i.e. a modification of their mortgage loans.  The fact that Plaintiffs acted outside the terms of the Settlement Agreement and paid World $10,000 of their own volition is not of present concern to the Court.  Plaintiffs chose to act first and make a motion to the Court to enforce the Settlement Agreement later.  Magistrate Judge Wells' January 2008 Order reflects that those actions have been taken into consideration as the execution of the Settlement Agreement moves forward, but it does not change the terms of the original Agreement, which was a promise to perform.  The Settlement Agreement is not a nullity, and as such, bars reinstitution of the prior claim.[38] Plaintiffs fail to state a claim upon which relief can be granted and the Complaint should be dismissed in its entirety.

Defendants' Motion to Dismiss is granted.  An appropriate order follows.[39]

---

[38]  See e.g. Palucis v. Continental Ins. Co., 1998 U.S. Dist. LEXIS 11811 (E.D. Pa. July 16, 1998), wherein the court granted a motion to dismiss an insurer bad faith claim based on a settlement agreement that had already addressed each of the issues raised in the settlement agreement.  Although the fact pattern is not identical to the one in the instant case the ruling is demonstrative that a settlement agreement may bar reinistutuion of a claim.

[39]  The Court acknowledges Defendants' second argument that the Motion to Dismiss should be granted on the premise that the doctrine of collateral estoppel applies and their third argument that the Complaint should be dismissed based on Federal Rule of Civil Procedure 12(b)(7) for failure to join World Savings Bank as an indispensable party.  The doctrine of collateral estoppel or issue preclusion does not apply to settlement agreements. The correct form of attack is that of claim preclusion or *res judicata*. See Toscano v. Conn. Gen. Life Ins. Co. 288

---

Fed. Appx. 36, 37 (3d Cir. 2008). Therefore, the Court will not consider arguments based on issue preclusion.  Since Defendants have successfully argued that the settlement agreement is not a nullity, necessitating a legal conclusion that the Motion to Dismiss should be granted, the Court will not address the matter of indispensable parties. Additionally, the Court notes that Defendants have asked for attorneys fees and sanctions against the Plaintiffs as part of their Motion to Dismiss.  However, neither Defendant has provided any factual or legal basis for the requested sanctions, which the Court will not grant at this time.  Should Defendants wish to pursue the matter they are each welcome to submit a Motion based on Rule 11(c) of the Federal Rules of Civil Procedure and Local Rule 54.1.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **DONNA M. BLAKE** | : | |
| **JAYSON E. COHEN** | : | |
| **MICHELLE M COHEN and** | : | |
| **DENISE A. DISCHERT,** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | **08-CV-1122** |
| **v.** | : | |
| | : | |
| **CUSTOM MORTGAGE SOLUTIONS, INC.,** | : | |
| **and ROBERT DISCHERT,** | : | |
| **Defendants.** | : | |

_____

**ORDER**

     **AND NOW**, this 17th day of March 2009, upon consideration Defendants' respective Motions to Dismiss [Doc. Nos. 3 & 8]; Plaintiffs' Responses [Doc. Nos. 5 & 9] and Defendant's Reply thereto [Doc. No. 11] it is hereby

     **ORDERED** that Defendants' Motions to Dismiss are **GRANTED**. Accordingly, Plaintiffs' Complaint is **DISMISSED**. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

                                           **BY THE COURT:**

                                         **s/Cynthia M. Rufe**

                                         **_____**

                                         **CYNTHIA M. RUFE, J.**